# EXHIBIT A

Filing # 81227540 E-Filed 11/27/2018 08:23:36 AM

## FORM 1.997. CIVIL COVER SHEET

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner for the use of the Clerk of Court for the purpose of reporting judicial workload data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

### I.      CASE STYLE

IN THE CIRCUIT COURT OF THE <u>SIXTH</u>  JUDICIAL CIRCUIT,
IN AND FOR <u>PASCO</u>  COUNTY, FLORIDA

Case No.:_____
Judge: _____

<u>Sheryl Holly-Taylor</u>
Plaintiff
        vs.
<u>Acadia Healthcare Company Inc</u>
Defendant

### II.     TYPE OF CASE

- ☐ Condominium
- ☐ Contracts and indebtedness
- ☐ Eminent domain
- ☐ Auto negligence
- ☐ Negligence – other
  - ☐ Business governance
  - ☐ Business torts
  - ☐ Environmental/Toxic tort
  - ☐ Third party indemnification
  - ☐ Construction defect
  - ☐ Mass tort
  - ☐ Negligent security
  - ☐ Nursing home negligence
  - ☐ Premises liability – commercial
  - ☐ Premises liability – residential
- ☐ Products liability
- ☐ Real Property/Mortgage foreclosure
  - ☐ Commercial foreclosure $0 - $50,000
  - ☐ Commercial foreclosure $50,001 - $249,999
  - ☐ Commercial foreclosure $250,000 or more
  - ☐ Homestead residential foreclosure $0 – 50,000
  - ☐ Homestead residential foreclosure $50,001 - $249,999
  - ☐ Homestead residential foreclosure $250,000 or more
  - ☐ Non-homestead residential foreclosure $0 - $50,000
  - ☐ Non-homestead residential foreclosure $50,001 - $249,999

- ☐ Non-homestead residential foreclosure $250,00 or more
- ☐ Other real property actions $0 - $50,000
- ☐ Other real property actions $50,001 - $249,999
- ☐ Other real property actions $250,000 or more

- ☐ Professional malpractice
  - ☐ Malpractice – business
  - ☐ Malpractice – medical
  - ☐ Malpractice – other professional
- ☒ Other
  - ☐ Antitrust/Trade Regulation
  - ☐ Business Transaction
  - ☐ Circuit Civil - Not Applicable
  - ☐ Constitutional challenge-statute or ordinance
  - ☐ Constitutional challenge-proposed amendment
  - ☐ Corporate Trusts
  - ☒ Discrimination-employment or other
  - ☐ Insurance claims
  - ☐ Intellectual property
  - ☐ Libel/Slander
  - ☐ Shareholder derivative action
  - ☐ Securities litigation
  - ☐ Trade secrets
  - ☐ Trust litigation

## COMPLEX BUSINESS COURT

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

III.  **REMEDIES SOUGHT** (check all that apply):
- ☒  Monetary;
- ☐  Non-monetary declaratory or injunctive relief;
- ☐  Punitive

IV.  **NUMBER OF CAUSES OF ACTION:** (      )
(Specify)

<u>3</u>

V.  **IS THIS CASE A CLASS ACTION LAWSUIT?**
- ☒  Yes
- ☐  No

VI.  **HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
- ☒  No
- ☐  Yes – If "yes" list all related cases by name, case number and court:

VII.  **IS JURY TRIAL DEMANDED IN COMPLAINT?**
- ☒  Yes
- ☐  No

---

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature <u>s/ Luis A Cabassa</u>       FL Bar No.: <u>53643</u>
       Attorney or party                                                                        (Bar number, if attorney)

   <u>Luis A Cabassa</u>       <u>11/27/2018</u>
     (Type or print name)                                                                Date

### IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
### IN AND FOR PASCO COUNTY, FLORIDA
### CIVIL DIVISION

**SHERYL HOLLY-TAYLOR,**
*on behalf of herself and on behalf*
*of all others similarly situated,*

       **Plaintiff,**

**v.**                              **CASE NO.:**

**ACADIA HEALTHCARE COMPANY, INC.,**

       **Defendant.**

_____/

### CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, SHERYL HOLLY-TAYLOR ("Plaintiff"), by and through undersigned counsel, and on behalf of herself and all others similarly situated, as well as in the public interest, brings the following Class Action as a matter of right against Defendant, Acadia Healthcare Company, Inc. ("Defendant") under the Fair Credit Reporting Act of 1970, as amended ("FCRA"), 15 U.S.C. § 1681 et seq., and in support of her claims states as follows:

### NATURE OF THE CASE

1.      Plaintiff brings this action against Defendants for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681a–1681x. The FCRA imposes several important requirements on employers that use a background checks as part of their hiring processes, which are designed to protect consumers like Plaintiff.

2.      Defendant is a foreign corporation headquarted in Franklin, Tennessee and doing business in Pasco County, Florida.

3.      As part of its hiring processes, Defendant uses consumer reports (commonly known as background checks) to make employment decisions. Because such employment decisions are

based in whole or in part on the contents of the background checks, Defendant is obliged to adhere to certain requirements of the FCRA.

4.    When using criminal background reports for employment purposes, employers must, before declining, withdrawing, or terminating employment based in whole or in part on the contents of the report, provide job applicants -- like Plaintiff -- with a copy of their respective background reports as well as a written summary of their rights under the FCRA.

5.    Providing a copy of the criminal background report as well as a statement of consumer rights before making an adverse employment decision arms the nation's millions of job applicants with the knowledge and information needed to challenge inaccurate, incomplete, and misleading public-records-based reports. The FCRA is designed to permit individuals whose reports are inaccurate with ample time to identify the inaccuracies and correct them before the employer has made an employment decision. Even where reports are accurate, the FCRA still demands that notice be given so applicants have an opportunity to address any derogatory information with employers before a hiring decision is made.

6.    First, Plaintiff brings class claims against Defendant for its violation of 15 U.S.C. § 1681b(b)(2)(A)(i) by procuring consumer reports on Plaintiff and other putative class members for employment purposes without first making proper disclosures to them in the format required by the statute. Under this subsection of the FCRA, Defendant is required to disclose to its employees—in a document that consists solely of the disclosure—that it may obtain a consumer report on them for employment purposes. This disclosure must be made by employers prior to obtaining copies of employees', or prospective employees', consumers reports. Defendant willfully violated this requirement by failing to provide Plaintiff and other putative class members with a copy of a separate document solely consisting of Defendant's disclosure. This practice

2

violates long-standing regulatory guidance from the Federal Trade Commission ("FTC"), and legions of case law, including from this Court.

7.    Second, Defendant also violated 15 U.S.C. § 1681b(b)(2)(A)(ii) by obtaining consumer reports for Plaintiff and other putative class members without proper authorization, due to the fact that its disclosure forms fail to comply with the requirements of the FCRA. One cannot meaningfully authorize her employer to take an action if she does not grasp what the action entails.

8.    Finally, Plaintiff brings a class claim under 15 U.S.C. § 1681b(b)(3)(A) by taking adverse employment action based on undisclosed consumer report information against Plaintiff and other putative class members, without first providing them with a copy of the pertinent consumer report and a summary of their rights.

## JURISDICTION AND VENUE

9.    This is an action for damages in excess of $15,000, exclusive of interest, fees, and costs, for violations of the FCRA.

10.    Venue is proper in this judicial circuit because Defendant does substantial business within this circuit and Plaintiff applied to work for Defendant in this judicial circuit.

## PARTIES

11.    Plaintiff is a "consumer" as protected and governed by the FCRA.

12.    Defendant is an "employer" as defined by the FCRA.

## FACTUAL ALLEGATIONS

### *Defendant's Willful Violation of 15 U.S.C. § 1681b(b)(2)*

13.    Defendant willfully violated 15 U.S.C. § 1681b(b)(2). Specifically, Defendant is liable for willfully violating Section § 1681b(b)(2) of the FCRA by procuring or causing to be procured a consumer report for employment purposes without first providing a clear and conspicuous disclosure in writing to the consumer in a document that consists solely of the

3

disclosure that a consumer report may be obtained from employment purposes.  The Defendant's

disclosure form is not a stand-alone document and violates Section § 1681b(b)(2) of the FCRA.

14.    Defendant's Disclosure contains in "eye-straining tiny typeface writing" the

following extraneous information:

a)    At least *seven* different state law notices informing consumers of their
additional rights under California, Maine, Minnesota, New York,
Oklahoma, Oregon, and Washington State (none of which are remotely
relevant to Plaintiff);

b)    A forced acknowledgement requiring applicants to submit to a vast and
limitless release of information that applies to third parties' provision of
information, including as to any and all "information about your criminal
history, social security verification, motor vehicle records, verification of
your education or employment history, or other background checks. An
investigative consumer report may include information about your
character, general reputation, personal characteristics, and/or mode of
living, and which can involve personal interviews with sources such as your
neighbors, friends, or associates….The scope of this notice and
authorization is all-encompassing, however, allowing the Company to
obtain from any outside organization all manner of consumer reports and
investigative consumer reports now and, if you are hired, throughout your
employment to the extent permitted by law. As a result, you should carefully
consider whether to exercise your right to request disclosure of the nature
and scope of any investigative consumer report;"

c)    A false and misleading statement stating that only upon "written request
made within a reasonable time, [Plaintiff could] request whether a consumer
report has been run about you, and disclosure of the nature and scope of any
investigative consumer report, and to request a copy of your report;"

d)    The name, address and telephone of "Universal Background Screening", the
consumer reporting agency hired by Defendant to procure Plaintiff's
consumer report; and

e)    Spaces for identification information about the applicant, including as to
Social Security Number, Date of Birth, and Driver's License Number.

15.    As explained by the Court in *Halstead* three-plus years before Plaintiff was

provided with a similar form, "all of those extraneous additions to the form stretched what should

be a simple disclosure form to two full pages of eye-straining tiny typeface writing." *Jones v.*

4

*Halstead Mgmt. Co.*, LLC, 81 F. Supp. 3d 324, 333 (S.D.N.Y. 2015). This information misled and confused Plaintiff. Additionally, it distracted her attention away from what was supposed to be the focus of the document: to alert Plaintiff that a consumer report was to be procured on her for employment purposes.

16.     The nearly limitless forced acknowledgement contained in Defendant's disclosure also both misled and confused Plaintiff. The document shifted Plaintiff's attention to the fact that the document basically operates as a functional waiver of employees and applicants' privacy rights. State and federal agencies, schools, financial institutions, health care providers, and other entities, all of which fall within the broad release language included in the Authorization, are subject to specific privacy laws which regulate nonpublic information.

17.     For example, the Family Educational Rights & Privacy Act, 20 U.S.C. § 1232g; 34 CFR Part 99, protects school records from disclosure absent consent from the student. Similarly, the Gramm- Leach-Bliley Act requires financial institutions to safeguard nonpublic information at 15 U.S.C. §§ 6801-6809, and the Health Insurance Portability and Accountability Act, which sets forth its Privacy Rule at 45 CFR Part 160, and Subparts A and E of Part 164, requires covered institutions to keep medical records private. Defendant's FCRA disclosure, however, purports to waive these carefully promulgated protections that protect the privacy of personal information held by the government and others.

18.     By including this broad release of information in its forms, Defendant placed its own interests ahead of those of consumers. Defendant's inclusion of the release of information made it easier for Defendant to gather information about employees and applicants, and protected itself and third parties from liability for acquiring such information. This benefit to Defendant came at the expense of consumers' statutory right to receive a compliant disclosure.

19.    Plaintiff was confused by non-standalone disclosure.

20.    Plaintiff would not have signed the disclosure form if she had known it was not compliant with 15 U.S.C. § 1681b(b)(2)(A)(i). The only reason she signed any of the documents at issue was because she had no choice if she wanted a job.

21.    Defendant's violations of 15 U.S.C. § 1681b(b)(2)(A)(i) were knowing and reckless. Defendant knowingly and recklessly disregarded the plain meaning of 15 U.S.C. § 1681b(b)(2)(A), as well as guidance from the Federal Trade Commission and numerous court decisions, including, for example, *Jones v. Halstead Mgmt. Co., LLC*, 81 F. Supp. 3d 324, 333, 2015 U.S. Dist. LEXIS 12807, *18 (S.D.N.Y. 2015), stating that the inclusion of extraneous information in the disclosure required under § 1681b(b)(2)(A) is a violation of the FCRA.

22.    Defendant knew that it had an obligation to provide a stand-alone disclosure before procuring a consumer report, but chose to place its own interests ahead of the rights of consumers.

23.    Defendant did not procure Plaintiff's report in connection with any investigation of suspected misconduct relating to employment, or compliance with federal, state, or local laws and regulations, the rules of a self-regulatory organization, or any preexisting written policies of the employer.

24.    Defendant repeatedly used the same disclosure form to procure background reports on numerous other applicants and employees.

25.    By systematically inserting extraneous information into Plaintiff's and other current or prospective employees' disclosures, Defendant knowingly and willfully violated 15 U.S.C. § 1681b(b)(2)(A)(i) by confusing and misleading Plaintiff and the putative Background Check class members.

26.    Plaintiff and the putative Background Check class members were damaged by

Defendant's actions.

27. **First**, as to the § 1681b(b)(2)(A)(i) and (ii) claims, in accordance with the Eleventh Circuit's recent decision in *Church v. Accretive Health, Inc.*, 2016 U.S. App. LEXIS 12414, *1 (11th Cir. July 6, 2016), Plaintiff and the putative Background Check class members suffered a concrete informational injury because Defendant failed to provide Plaintiff with information to which she was entitled to by statute, namely a stand-alone FCRA disclosure form. Through the FCRA, Congress has created a new right—the right to receive the required disclosure as set out in the FCRA—and a new injury—not receiving a stand-alone disclosure.

28. Pursuant to § 1681b(b)(2), Plaintiff and the putative Background Check class members were entitled to receive certain information at a specific time, namely a disclosure that a consumer report may be procured for employment purposes in a document consisting solely of the disclosure. Such a disclosure was required to be provided to Plaintiff before the consumer reports were to be procured. By depriving Plaintiff of this information, Defendant injured Plaintiff and the putative class members they seek to represent.

29. **Second**, as to the § 1681b(b)(2)(A)(i) and (ii) claims, Defendant invaded Plaintiff's right to privacy. Under the FCRA, "a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless" it complies with the statutory requirements (*i.e.*, disclosure and authorization) set forth in the following subsections: 15 U.S.C. § 1681b(b)(2). As one court put it, "[t]he FCRA makes it unlawful to 'procure' a report without first providing the proper disclosure and receiving the consumer's written authorization." *Harris v. Home Depot U.S.A., Inc.*, 114 F. Supp. 3d 868, 869 (N.D. Cal. 2015). Plaintiff's consumer reports contained a wealth of extremely private information which Defendant had no right to access absent a specific Congressional license to do so. The consumer reports Defendant obtained on Plaintiff and the putative Background Check class members included, *inter alia*, dates of birth, partial social Security

7

Number, address history, phone number, e-mail address, and information about her credit history.  By procuring reports containing this private information without complying with first complying with the FCRA's disclosure requirements, Defendant illegally invaded Plaintiff's and the putative Background Check class members' rights to privacy.

30. **Third**, as to the § 1681b(b)(2)(A)(i) and (ii) claims, Defendant's above violations created a risk of harm that Plaintiff and the putative Background Check class members would be harmed in precisely the way Congress was attempting to prevent when it mandated what disclosures employers must make to applicants.  Without accurate source information as to what to do if the information in their reports was inaccurate, a consumer would be left confused as to where to go to correct erroneous data contained in a report and be unable to know whether any erroneous data would find its way into future consumer reports.

31. Furthermore, Plaintiff would not have agreed to provide Defendant with access to her consumer reports had she known Defendant's FCRA Disclosure Form was non-compliant.

32. As detailed above, *Spokeo* expressly recognized that "the risk of real harm" can be enough, on its own, to satisfy the concreteness requirement. 136 S. Ct. at 1549. In particular, where Congress has found that a violation of a statutory right poses a "material risk of harm," a plaintiff "need not allege any *additional* harm beyond the one Congress has identified." *Id.* at 1549–50; *see also id.* at 1553 (Thomas, J., concurring) ("A plaintiff seeking to vindicate a statutorily created private right need not allege actual harm beyond the invasion of that private right.").

33. **Fourth,** as to the § 1681b(b)(2)(A)(i) and (ii) claims, the harm created by Defendant is also concrete in the sense that it involves a clear *de facto* injury, *i.e.*, the unlawful disclosure of legally protected information. Insofar as *Spokeo* directs us to consider whether an alleged injury-in-fact "has traditionally been regarded as providing a basis for a lawsuit," Congress has long provided plaintiffs with the right to seek redress for unauthorized disclosures of information that, in Congress's

judgment, ought to remain private. *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 134 (3d Cir. 2015). Congress's reasons for enacting the FCRA show that it intended that the law be construed to promote the credit industry's responsible dissemination of accurate and relevant information, and afford consumers the substantive right to receive certain specified information, including a stand-alone disclosure *before* their consumer reports are obtained by prospective employers.

### *Defendant's Willful Violation of 15 U.S.C. § 1681b(b)(3)*

34.    Defendant routinely takes adverse action against applicants and employees, like Plaintiff, on the basis of information contained in background reports without first providing those individuals with a copy of the report and a summary of their rights. This conduct violates 15 U.S.C. § 1681b(b)(3).

35.    Named Plaintiff Sheryl Holly-Taylor applied for and was hired as housekeeper on July 3, 2018. She was supposed to start working on or about July 22, 2018 contingent on a background check.

36.    Based upon Defendant's offer of employment, Plaintiff quit her current job.

37.    On July 23, 2018 Plaintiff still had not heard back from Defendant as to when she was supposed to actually begin working. So, that same day, July 23, 2018, Plaintiff wrote Defendant's Human Resources Director and inquired as to when she was supposed to start.

38.    Defendant's HR Director responded with an e-mail stating, "your background came back and there are two charges that require explanation," along with a reference to two misdemeanor charges from 2005 and 2003. Importantly, at that time, and contrary to 15 U.S.C. § 1681b(b)(3), neither Defendant nor its consumer reporting agency provided to Plaintiff a copy of her consumer report a copy of the consumer report or with a copy of statement of her rights under the FCRA.

39.    Defendant then fired Plaintiff a few days later.   In blatant violation of 15 U.S.C. § 1681b(b)(3), was not provided with a copy of the consumer report in advance of the termination, nor was she provided with a copy of her rights under the FCRA.

40.    Had Defendant bothered to provide Plaintiff with a copy of the consumer report and given her the chance to explain the contents of her report prior to taking adverse action against her, Defendant would have learned that Plaintiff sought to have her record from nearly fifteen years ago expunged.  But Plaintiff was never given an opportunity to explain anything to Defendant prior to her abrupt termination.

41.    Defendant's termination of Plaintiff's employment caused Plaintiff damages in the form of lost pay and emotional damages due to stress caused by the loss of her job.

42.    Furthermore, Defendant caused Plaintiff to suffer an informational injury by denying her information in the form of a compliant pre-adverse action notice containing a copy of the consumer report at issue, and a copy of her rights under the FCRA, both of which she is plainly entitled under 15 U.S.C. 1681b(b)(3).   These same injuries are shared by all members of the putative pre-adverse action class Plaintiff seeks to represent in this litigation.

43.    Simply put Defendant violated 15 U.S.C. § 1681b(b)(3)(A) because, before taking adverse action against Plaintiff it did not provide her either with a copy of her consumer report or with the summary of rights required under 15 U.S.C. § 1681b(b)(3)(A).

44.    In accordance with the FCRA's requirements, the consumer reporting agency from which Defendant acquired consumer reports during the two years preceding the filing of this Complaint required Defendant to certify that it would comply with the FCRA's pre-adverse action notice requirements if those requirements became applicable. *See* 15 U.S.C. § 1681b(b)(1).

45.    Thus, Defendant *knew* that it had an obligation to provide current or prospective

employees with copies of their reports and summaries of their rights prior to taking adverse action based in whole or in part on a consumer report.

46.     Defendant repeatedly failed to provide other applicants and employees with a copy of their reports and a description of their rights prior to terminating or denying their employment or making other decisions for employment purposes that adversely affected their current or prospective employment.

47.     By systematically failing to provide Plaintiff and other employees and applicants with pre-adverse action notice, including a copy of the report and a summary of their rights, prior to taking adverse action against them, Defendant knowingly and willfully violated 15 U.S.C. § 1681b(b)(3).

48.     Plaintiff and Pre-Adverse Action Class suffered a concrete informational injury arising from Defendant's failure to provide the pre-adverse action notice required by 15 USC § 1681b(b)(3). Pursuant to § 1681b(b)(3), Plaintiff was entitled to receive certain information at a specific time, namely a copy of her consumer report and a summary of her rights before Defendant made the decision to terminate her employment.  Defendant was required to provide Plaintiff with this information, and to give her a reasonable amount of time to explain any issues contained in her report (typically 5 days), before Defendant took adverse action against her. By depriving Plaintiff of all of this information, Defendant deprived Plaintiff of the ability to review the adverse information about her and explain to Defendant any mitigating factors.  Consequently, Plaintiff was also deprived of the opportunity to explain to Defendant why its interpretation of her report did not warrant termination and/or a withdrawal of her employment offer.

49.     Plaintiff and Pre-Adverse Action Class suffered an invasion of privacy as a result of Defendant using her private information in a manner which it was not entitled to use it pursuant

to the law. 15 U.S.C. §1681b(b)(3) contains restrictions on the circumstances in which a consumer report can be used as a basis for adverse employment action. One of those conditions is that a report may only be used as a basis for adverse employment action when the consumer to whom the report relates has previously been provided with a copy of the report and a summary of the consumer's rights. Absent the fulfillment of these conditions, the employer is not allowed to rely on the private information contained in the report. By using Plaintiff's information in a manner not allowed by law, Defendant invaded her privacy.

50.     Plaintiff also suffered actual damages because she experienced a job loss, and wage loss, as a result of Defendant's failure to provide pre-adverse action notice. Had Defendant given Plaintiff an opportunity to explain its erroneous interpretation of her report before it made the decision to terminate her, it is entirely possible Plaintiff would have been permitted to keep her job and, in turn, her wages.

51.     Plaintiff also experienced emotional distress due to Defendant's failure to provide the required pre-adverse action notice and feelings of helplessness and humiliation due to her inability to explain why her report.

52.     Due to Defendant's refusal to provide the statutorily-required pre-adverse action documentation (including a copy of her consumer report and a summary of her rights under the FCRA), Plaintiff suffered harm to her reputation because, before she was able to explain the information in her consumer report, Defendant made the decision to terminate her employment.

53.     Plaintiff continues to suffer emotional distress due to fear Defendant will inform prospective or future employers that she was fired due to issues with her background.

54.     Based on the foregoing violations, Plaintiff asserts FCRA claims against Defendant on behalf of herself and the class of Defendant's employees, and prospective employees.  On

behalf of herself and the Putative Classes, Plaintiff seeks statutory damages, costs and attorneys' fees, equitable relief, and other appropriate relief pursuant to the FCRA.

## **CLASS ACTION REQUIREMENTS**

55.     Plaintiff asserts her claims in Counts 1 and 2 on behalf of a Putative Background Check Class defined as follows:

> **All of Defendant's employees and job applicants who applied for or worked in a position with the Defendant in the United States and who were the subject of a consumer report that was procured by Defendant within five years of the filing of the complaint through the date of final judgment.**

56.     Plaintiff asserts her claims in Counts 3 on behalf of a Putative Background Check Class defined as follows:

> **All of Defendant's employees and job applicants in the United States against whom adverse employment action was taken based, in whole or in part, on information contained in a consumer report within five years of the filing of this complaint through the date of final judgment in this action who were not provided the proper pre-adverse notice documentation.**

57.     Numerosity: The Putative Classes are so numerous that joinder of all Class members is impracticable. Defendant regularly obtains and uses information in consumer reports to conduct background checks on prospective employees and existing employees, and frequently relies on such information, in whole or in part, as a basis for adverse employment action. Plaintiff is informed and believes that during the relevant time period, thousands of Defendant's employees and prospective employees satisfy the definition of the Putative Classes.

58.     Typicality: Plaintiff's claims are typical of the members of the Putative Classes. Defendant typically uses consumer reports to conduct background checks on employees and prospective employees. The FCRA violations suffered by Plaintiff are typical of those suffered by other Putative Class members, and Defendant treated Plaintiff consistent with other Putative Class members in accordance with its standard policies and practices.

13

59.    Adequacy:    Plaintiff will fairly and adequately protect the interests of the Putative Classes, and has retained counsel experienced in complex class action litigation.

60.    Commonality: Common questions of law and fact exist as to all members of the Putative Classes and predominate over any questions solely affecting individual members of the Putative Classes, including but not limited to:

a)    Whether Defendant uses consumer report information to conduct background checks on employees and prospective employees;

b)    Whether Defendant's background check practices and/or procedures comply with the FCRA;

c)    Whether Defendant violated the FCRA by procuring consumer report information without making proper disclosures in the format required by the statute;

d)    Whether Defendant violated the FCRA by procuring consumer report information based on invalid disclosures and/or authorizations;

e)    Whether Defendant's violations of the FCRA were willful;

f)    The proper measure of statutory damages; and

g)    The proper form of injunctive and declaratory relief.

61.    This case is maintainable as a class action because prosecution of actions by or against individual members of the Putative Classes would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for Defendant. Further, adjudication of each individual Class member's claim as separate action would potentially be dispositive of the interest of other individuals not a party to such action, impeding their ability to

14

protect their interests.

62.     This case is maintainable as a class action because Defendant has acted or refused to act on grounds that apply generally to the Putative Classes, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Classes as a whole.

63.     Class certification is also appropriate because questions of law and fact common to the Putative Classes predominate over any questions affecting only individual members of the Putative Classes, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendant's conduct described in this Complaint stems from common and uniform policies and practices, resulting in common violations of the FCRA. Members of the Putative Classes do not have an interest in pursuing separate actions against Defendant, as the amount of each Class member's individual claims is small compared to the expense and burden of individual prosecution.   Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Putative Class members' claims in a single forum.

64.     Plaintiff intends to send notice to all members of the Putative Classes to the extent required by Rule 1.220.

**FIRST CLASS CLAIM FOR RELIEF**
**Failure to Make Proper Disclosure in Violation of**
**15 U.S.C. § 1681b(b)(2)(A)(i)**

65.     Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

66.     In violation of the FCRA the background check Defendant required the

15

Background Check Class to complete as a condition of their employment with Defendant does not satisfy the disclosure requirements of 15 U.S.C. § 1681b(b)(2)(A)(i) because Defendant failed to provide a stand-alone document as to the consumer report information being obtained and utilized.

67.    Defendant violated the FCRA by procuring consumer reports relating to Plaintiff and other Background Check Class members without first making proper disclosures in the format required by 15 U.S.C. § 1681b(b)(2)(A)(i). Namely, in a stand-alone document.

68.    The foregoing violations were willful. Defendant knew it was required to provide a stand-alone form (separate from the employment application) prior to obtaining and then utilizing a consumer report on the Background Check Class members. By failing to do so Defendant acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and other Background Check Class members under 15 U.S.C. § 1681b(b)(2)(A)(i). Defendant knew or should have known about its legal obligations under the FCRA. These obligations are well established in the plain language of the FCRA, in the promulgations of the Federal Trade Commission, and long-established case law. Defendant obtained or had available substantial written materials which apprised it of its duties under the FCRA. Any reasonable employer knows about or can easily discover these mandates.

69.    Defendant's willful conduct is also reflected by, among other things, the following facts:

a)    approximately three years before Plaintiff's Complaint in this case was filed (meaning the opinion was readily available to Defendant and its counsel and before Plaintiff applied to work for it), another United States District Court, *Jones v. Halstead Mgmt. Co., LLC*, 81 F. Supp. 3d 324 (S.D.N.Y. Jan. 27, 2015), held that a similar disclosure form was not a stand-alone disclosure;

16

b)      additional federal district courts reached this same conclusion, including in *Case v. Hertz Corp.*, No. 15-CV-02707-BLF, 2016 WL 1169197, at *5 (N.D. Cal. Feb. 26, 2016); *Robrinzine v. Big Lots Stores, Inc.*, 2016 U.S. Dist. LEXIS 5689, *2 (N.D. Ill. Jan. 19, 2016) (same); *Martin v. Fair Collections & Outsourcing, Inc.*, 2015 U.S. Dist. LEXIS 86129, *14 (D. Md. June 29, 2015) (same);

c)      Defendant is a large corporation with access to legal advice through its own general counsel's office and outside employment counsel;

d)      there is no contemporaneous evidence that it determined that its conduct was lawful; Defendant knew or had reason to know that its conduct was inconsistent with published FTC guidance interpreting the FCRA and the plain language of the statute and/or available case law;

e)      Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless; and, finally.

70.     Plaintiff and the Background Check Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. §1681n(a)(2).

71.     Plaintiff and the Background Check Class are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

## SECOND CLASS CLAIM FOR RELIEF
### Failure to Obtain Proper Authorization in Violation of FCRA 15 U.S.C. § 1681b(b)(2)(A)(ii)

72.     Plaintiff alleges and incorporates by reference the allegations in the preceding

17

paragraphs.

73.     Defendant violated the FCRA by procuring consumer reports relating to Plaintiff and other Background Check Class members without proper authorization. See 15 U.S.C. § 1681b(b)(2)(A)(ii).

74.     The foregoing violations were willful. Defendant acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and other Background Check Class members under 15 U.S.C. § 1681b(b)(2)(A)(ii). The authorization requirement follows the disclosure requirement of § 1681b(b)(2)(A)(i) and presupposes that the authorization is based upon a valid disclosure. One cannot meaningfully authorize her employer to take an action if she does not grasp what that action entails.

75.     Defendant knew or should have known about its legal obligations under the FCRA. These obligations are well established in the plain language of the FCRA, in the promulgations of the Federal Trade Commission, and case law available to Defendant years before Plaintiff and the putative class members whom she seeks to represent applied to work for it. Defendant obtained or had available substantial written materials which apprised it of its duties under the FCRA. Any reasonable employer knows about or can easily discover these mandates.

76.     Defendant's willful conduct is also reflected by, among other things, the following facts: Defendant is a large corporation with access to legal advice through its own general counsel's office and outside employment counsel, and there is no contemporaneous evidence that it determined that its conduct was lawful; Defendant knew or had reason to know that its conduct was inconsistent with published FTC guidance interpreting the FCRA, case law (including and especially *Jones v. Halstead Mgmt. Co.*, LLC, 81 F. Supp. 3d 324 (S.D.N.Y. 2015), and the plain language of the statute; and, finally, Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

77.    Plaintiff and the Background Check Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. §1681n(a)(2).

78.    Plaintiff and the Background Check Class are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

## THIRD CLASS CLAIM FOR RELIEF
### Failure to Provide Copy of Consumer Report in Violation of
### 15 U.S.C. § 1681b(b)(3)(A)

79.    Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

80.    Defendant used a "consumer report," as defined by the FCRA, to take adverse employment action against Plaintiff and other members of the Pre-Adverse Action Class.

81.    Defendant violated the FCRA by failing to provide Plaintiff and other Pre-Adverse Action Class members with a copy of the consumer report that was used to take adverse employment action against them. 15 U.S.C. § 1681b(b)(3)(A).

82.    The foregoing violations were willful. Defendant acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and other Pre-Adverse Action Class members under 15 U.S.C. § 1681b(b)(3)(A).

83.    Defendant knew or should have known about its legal obligations under the FCRA. These obligations are well established in the plain language of the FCRA and in the promulgations of the Federal Trade Commission, and under long-established case law. Defendant obtained or had available substantial written materials which apprised them of its duties under the FCRA. Any reasonable employer knows about or can easily discover these mandates.

84.    Defendant's willful conduct is also reflected by, among other things, the following

19

facts:

a) Defendant is a national corporation with access to legal advice through its own general counsel's office and outside employment counsel, and there is no contemporaneous evidence that it determined that its conduct was lawful;

b) Defendant knew or had reason to know that its conduct was inconsistent with published FTC guidance, and case law, interpreting the FCRA, as well as the plain language of the statute;

c) Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless;    and

d) The consumer reporting agency that provided Plaintiff's consumer report information to Defendant has published numerous FCRA-related articles and compliance self-help materials and provided them to Defendant, including as to pre-adverse notice.

85.    Plaintiff and the Adverse Action Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. §1681n(a)(2).

86.    Plaintiff and the Adverse Action Class are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

## **PRAYER FOR RELIEF**

87.    ***WHEREFORE***, Plaintiff, on behalf of herself and the Putative Classes, prays for relief as follows:

20

a)     Determining that this action may proceed as a class action under Rule 23(b)(1), and (2) and (3) of the Federal Rules of Civil Procedure;

b)     Designating Plaintiff as class representative and designating Plaintiff's counsel as counsel for the Putative Classes;

c)     Issuing proper notice to the Putative Classes at Defendant's expense;

d)     Declaring that Defendant committed multiple, separate violations of the FCRA;

e)     Declaring that Defendant acted willfully in deliberate or reckless disregard of Plaintiff's rights and its obligations under the FCRA;

f)     Awarding statutory damages as provided by the FCRA, including punitive damages;

g)     Awarding reasonable attorneys' fees and costs as provided by the FCRA;

h)     Granting other and further relief, in law or equity, as this Court may deem appropriate and just.

## **DEMAND FOR JURY TRIAL**

88.     Plaintiff and the Putative Class demand a trial by jury.

DATED this 27th day of November, 2018.

Respectfully submitted,

**LUIS A. CABASSA**
Florida Bar Number: 053643
Direct No.: 813-379-2565
**BRANDON J. HILL**
Florida Bar Number: 37061
Direct No.: 813-337-7992
**WENZEL FENTON CABASSA, P.A.**
1110 North Florida Ave., Suite 300
Tampa, Florida 33602
Main No.: 813-224-0431
Facsimile: 813-229-8712
Email: lcabassa@wfclaw.com
Email: bhill@wfclaw.com
Email: twells@wfclaw.com
**Attorneys for Plaintiff**

IN THE CIRCUIT COURT FOR THE SIXTH JUDICIAL CIRCUIT
IN AND FOR PASCO COUNTY, FLORIDA
CIVIL DIVISION

SHERYL HOLLY-TAYLOR,

      Plaintiff,                       **CASE NO: 2018-CA-003744-CAAXES**

v.

ACADIA HEALTHCARE,

      Defendant.

_____/

**SUMMONS**

THE STATE OF FLORIDA:
To Each Sheriff of the State:

    **YOU ARE HEREBY COMMANDED** to serve this Summons, a copy of the Complaint, Request for Production, First Set of Interrogatories, and Notice of Taking Corporate Representative Deposition in this action on defendant:

**ACADIA HEALTHCARE**
**C/O CT Corporation System, REGISTERED AGENT**
**300 Montvue Rd**
**Knoxville, TN 37919-5546**

    Each defendant is required to serve written defenses to the complaint or petition on Luis A. Cabassa, plaintiff's attorney, whose address is Wenzel Fenton Cabassa 1110 N. Florida Avenue, Suite 300, Tampa, Florida 33602 within 20[1] days after the service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the clerk of this court either before service on plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

DATED on November 27, 2018.

| | |
|---|---|
| *[signature]* | Paula S. O'Neil, Ph.D.<br>As Clerk of the Court |
| Printed: Luis A. Cabassa<br>Attorney for Plaintiffs<br>Address: Wenzel Fenton Cabassa<br>1110 N. Florida Avenue, Suite 300<br>Tampa, Florida 33602<br>Florida Bar No. : 0053643 | By:   /S/ LORRAINE M. BROOKS<br>_____<br>As Deputy Clerk<br>(813) 276-8100     **FEB 12 2019** |

---

[1] Except when suit is brought pursuant to section 768.28, Florida Statutes, if the State of Florida, one of its agencies, or one of its officials or employees sued in his or her official capacity is a defendant, the time to be inserted as to it is 40 days. When suit is brought pursuant to section 768.28, Florida Statutes, the time to be inserted is 30 days.

Issued/ret. Atty.

If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Within two (2) working days of your receipt of this Summons please contact the Public Information Dept., Pasco County Government Center, 7530 Little Rod., New Port Richey, FL 34654; (727) 847-8110 (V) in New Port Richey; (352) 521-4274, Ext. 8110 (V) in Dade City; via 1-800-955-8771 if you are hearing impaired. The court does not provide transportation and cannot accommodate for this service. Persons with disabilities needing transportation to court should contact their local public transportation providers for information regarding disabled transportation services.

IMPORTANT

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book). If you choose to file a written response yourself, at the same time you file your written response to the court you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named in the documents.

IMPORTANTE

Usted ha sido demandado legalmente. Tiene 20 dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefonica no lo protegera. Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica. Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

IMPORTANT

Des poursuites judiciares ont ete entreprises contre vous. Vous avez 20 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce tribunal. Un simple coup de telephone est insuffisant pour vous proteger. Vous etes obliges de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre
argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal. Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones). Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

2

Luis A. Cabassa*
Patrick Elliott
Matthew K. Fenton
Brandon J. Hill †
Brianna Jordan
Christopher J. Saba
Donna V. Smith ††
Steven G. Wenzel*

# WENZELFENTONCABASSA P.A.

### Employee Rights Attorneys

1110 N. Florida Avenue, Suite 300, Tampa, FL 33602
Phone: (813) 224-0431 • Fax: (813) 229-8712

*BOARD CERTIFIED LABOR
& EMPLOYMENT LAW

† ADMITTED TO PRACTICE
IN WASHINGTON D.C.
AND ILLINOIS

†† ADMITTED TO PRACTICE
IN GEORGIA
AND LOUISIANA

February 5, 2019

Clerk of Circuit Court Pasco County
8902 Government Drive
New Port Richey, FL 34654

      Re:   Holly-Taylor, Sheryl v. Acadia Healthcare Company, Inc.
            CASE No.: 2018-CA-003744-CAAXES

Dear Sir/Madam:

     I have enclosed the Summons for issuance for the above case style along with check # 1891 for $10.00.

     I have also enclosed a self-addressed stamped envelope for you to return the issued Summons.

     Thank you for your prompt attention.

Sincerely,

Tania Kocké, Case Manager
Luis A. Cabassa

By Appointment Only:
5401 South Kirkman Road • Orlando, Florida 32819
711 North Washington Blvd. • Sarasota, Florida 34236
Miami Lakes West, 7900 Oak Lane, Ste 400 • Miami Lakes, Florida 33016
Bank of America Tower, 50 N. Laura Street, Ste 2500 • Jacksonville, Florida 32202
First Central Tower, 360 Central Avenue, Ste 800 • St. Petersburg, Florida 33701